## KOHLER et al. v. JACOBS et al.
### No. 10610.

Circuit Court of Appeals, Fifth Circuit.

Nov. 5, 1943.

John I. Kelley, of Atlanta, Ga., for appellants.

Max F. Goldstein and Herbert J. Haas, both of Atlanta, Ga., for appellees.

Before SIBLEY, HOLMES, and WALLER, Circuit Judges.

SIBLEY, Circuit Judge.

Max N. Kohler and Mrs. Max N. Kohler sued National Linen Service Corporation and J. B. Jacobs for damages for deceit in the purchase by the latter from the former on June 5, 1935, of voting trust certificates for 900 shares of stock in the Corporation. The complaint was dismissed on motions which averred that no claim was set out on which relief could be had, and that relief was barred by the four year statute of limitations. The Kohlers appeal.

The Clerk of the district court sent up as part of the record certain admissions obtained from the plaintiffs by the defendants under Rule of Civil Procedure 36, 28 U.S.C.A. following section 723c, and interrogatories addressed to Jacobs by the Kohlers, with documentary exhibits. In their briefs of argument appellees bring forward portions of these as tending to show the Kohlers have no case. Over objection this may not be done. The admissions and interrogatories are in the nature of evidence, and do not alter the pleadings. They may usually be offered in evidence on the trial, and may be considered on a motion for summary judgment under Rule 56. But a motion to dismiss for failure to state a claim on which relief may be granted is to be heard on the face of the complaint and amendments. Sperry Products v. Association of Am. Railroads, D.C., 44 F.Supp. 660; Dunleer Co. v. Minter Homes Corp., D.C., 33 F. Supp. 242; Bagby v. Cleveland Wrecking Co., D.C., 28 F.Supp. 271. On a motion to dismiss, demurrers having been abolished, and with them the rule of construing the pleadings strictly against the pleader, the allegations ought to be given a fair construction to come at the case intended to be stated, and unless it clearly appears that the facts do not authorize relief, or that relief is barred by some fact alleged, the matter ought to be further examined by summary judgment proceedings or by a trial. DeLoach v. Crowley's, 5 Cir., 128 F. 2d 378; Tahir Erk v. Glenn L. Martin Co., 4 Cir., 116 F.2d 865; Leimer v. State Mut. Life Assur. Co., 8 Cir., 108 F.2d 302.

The complaint here, because of several amendments, is involved and not entirely clear, but we think fairly alleges the following:

Kohler owned 900 shares of stock in the Corporation, which with other stock of the Corporation was put into the name and control of a voting trust, Jacobs being one of the trustees. The trustees issued trust certificates to the stockholders. The trustees elected for the Corporation ten directors, including Jacobs, A. J. Weinberg, and Kohler. Kohler, however, lived in Mississippi and did business in New Orleans, while the offices of the Corporation, its books and most of its business were in Atlanta. Jacobs was executive vice-president and Weinberg vice-president and treasurer, while Kohler was inactive and without much knowledge of the Corporation's affairs. He borrowed $23,000 from Mrs. Kohler on a pledge of 800 of his trust cer-

tificates. The Corporation had a branch business in New Orleans, in charge of one Winston. Kohler and Mrs. Kohler wished to sell their certificates, and Kohler in behalf of both requested Winston to get information as to the value of the stock, and to sell the certificates for that value. Winston communicated to Weinberg in Atlanta Kohler's request and Weinberg communicated it to Jacobs. Jacobs, Weinberg and Winston and the Corporation conspired and confederated together to deceive Kohler, and through Winston stated to Kohler that the stock had a value of $1.05 per share, and that Jacobs offered $945 for the certificates. Kohler drew a draft on Jacobs, attaching the indorsed certificates, and sent it to Atlanta, where it was paid. Kohler was without information as to the true financial condition of the Corporation, and could not secure it except from its active officers, Jacobs and Weinberg, who were well informed, but furnished no information from which its business or the value of its stock could be known. There were no financial statements published, or reports to investment journals, but they were deliberately withheld. The stock and voting certificates were not listed on any exchange, and there was no open trading in them. Prior to the sale in 1935 and since to the filing of the petition in 1942, the voting trustees and said officers have carefully concealed from plaintiffs and other stockholders, except those of their own selection, all information and sources of information from which knowledge of the value of the stock and voting trust certificates might have been ascertained. The stock and certificates were at the time worth $16 per share, and Jacobs "while a voting trustee had bought and caused to be bought and sold voting trust certificates, and was familiar with sales made by others and was familiar with the value of said stock, and the voting trustees kept records showing the value thereof, none of which was disclosed to complainants". There was no market price for said stock, "but the actual value thereof on and prior to said time was $16.00 per share or in excess thereof, and so much in excess of the amount paid plaintiffs as to constitute a fraud upon plaintiffs and a fraudulent concealment from them of the actual value. * * * The assets of said Corporation on said date so far exceeded its liabilities, and the business of the Corporation was so profitable and increasing so rapidly that the actual value of said trust certificates was $16.00 per share or in excess thereof". The Corporation as was known to Jacobs, but not to plaintiffs, had been buying up linen businesses in the southeast, issuing stock or voting certificates in part payment at valuations grossly in excess of the price paid plaintiffs, and by reason of these transactions Jacobs knew that a fair market value was approximately $16 on June 5, 1935. Plaintiffs allege the certificates were purchased by Jacobs for his own use and benefit, or in the name of Jacobs for the Corporation, that it might use the same in carrying out contracts with branch managers and other department heads. Jacobs as voting trustee and as an officer of the Corporation was in a confidential relationship to Kohler, and owed a duty of full disclosure, as did the Corporation to its stockholder. Plaintiffs believed the representation as to value made through Winston and relied on it and were deceived by it. They had no knowledge or suspicion of its falsity until some two years before suit, and sued so soon as they could find evidence thereof.

▪ The judge held there was no confidential relation between the Corporation and Kohler as a stockholder dealing in its stock, and no duty of disclosure, and that Kohler as director was under legal duty to be informed about the corporate business, and that no superiority of knowledge could be attributed to the Corporation, which was necessary to hold it for fraud. He also held any suit against the Corporation was barred by the Georgia limitation statute of four years. As to Jacobs, the question of limitation was held open for trial, but he dismissed the case as to him apparently because the value of $16 per share was not alleged to be a value realizable on a sale for cash, but only in property exchanges, and because the enquiry as to "the value" of the certificates was too vague to sustain a charge of fraud in an equally vague reply.

We do not agree with these conclusions. As to the Corporation, it is true that it owes the stockholder no duty of disclosure when he trades with others in its stock, and since he has access to the corporate books diligence might well lead him to them when he desires information from the Corporation. But if a corporation (which ordinarily does not deal in its own stock) for its own lawful purposes sets out to buy shares through its managing officers, and they by intentional misrepresentation and concealment deceive a selling stockholder who is

ignorant of the truth, though he be an inactive director who ought to know, so that he is damaged, we see no reason why the corporation is not bound for the consequences. The deceit practiced by the corporation's high officers in the corporation's business and for its benefit must be taken to be a corporate act, and not ultra vires. 19 C.J.S., Corporations, § 1278(a) (b); 13 Am.Jur., Corporations, § 1125. If on trial it should appear that the transaction was a deceit committed by Jacobs for the benefit of the Corporation, both the Corporation and himself as an individual might be liable; because the action is not one to rescind a fraudulent transaction, or to recover an unjust enrichment, but for the damages done by a wilful tort for which a perpetrator may be held liable though he realized no benefit from it. United States v. City of Brookhaven, 5 Cir., 134 F.2d 442. And if there was a fraudulent continuing concealment of the cause of action by the Corporation's officers and the plaintiff used due diligence, under the Georgia statute the running of limitation might be tolled until the deceit was discovered. Anderson v. Gailey, D.C., 33 F.2d 589.

■■ If the purchase was for Jacobs and not for the Corporation, the Corporation of course would not be liable for what Jacobs said and did. He, as the voting trustee of Kohler, was perhaps in a confidential relation to him, depending on the nature of the trust. In dealing with the subject matter of the trust for himself he may have been under a special duty of disclosure. He was certainly under the ordinary duty not intentionally to deceive. The Georgia law, which concededly applies, is: Georgia Code Section 105-301: "Fraud by one, accompanied with damage to the party defrauded, in all cases gives a right of action." Section 105-302: "Wilful misrepresentation of a material fact, made to induce another to act, and upon which he does act to his injury, will give a right of action. Mere concealment of such a fact, unless done in such a manner as to deceive and mislead, will not support an action. In all cases of deceit, knowledge of the falsehood constitutes an essential element. A fraudulent or reckless representation of facts as true, which the party may not know

to be false, if intended to deceive, is equivalent to a knowledge of the falsehood." And see Southern Development Co. v. Silva, 125 U.S. 247, 8 S.Ct. 881, 31 L.Ed. 678. Accordingly in a suit for deceit it is necessary that there be a misrepresentation of a fact. Value is a fact, but a statement about it may be made as an opinion only. An opinion of value expressed by the opposite party to a bargain is ordinarily not considered a fraud, though untrue. 26 C.J., Fraud, § 110; 37 C.J.S., Fraud, § 57. But if one party not knowing the facts, whether as to actual sales or other facts which go to make value, asks the other whom he knows to be familiar with the facts, what a fair trade value is, intending as the other knows to rely on the opinion, that other ought to give an honest opinion.

■ In the pleader's allegations there is some uncertainty as to the exact sort of value he asked about, and as to the exact terms of the reply made him, and indeed as to the facts which he now contends show another value. Special demurrers might formerly have sifted the matter down, but they are abolished. Under the present rules, we think there was enough to show a probable case, if all that is alleged is proven. It would be more consonant with these rules to hear the truth, than to dismiss the case without a hearing. General allegations as to most matters are now enough, but fraud, which includes deceit, must be particularly alleged. Rule 9(b). One has to search in these pleadings for the particulars, but they can be found. Suppression of the facts of the Company's success, ignorance on Kohler's part, shown by this enquiry about value made in his behalf, the confederating of his agent to sell with the buyer, intentional statement of an inherent value which, though not proven by cash sales, was grossly less than what reasonably ought to be inferred from the Company's condition, are particulars tending to establish fraud. Also Kohler's want of diligence to know the truth at the time, or to discover it afterwards as affecting the bar of limitation, are matters of fact to be decided on the evidence rather than to be inferred notwithstanding his allegations to the contrary. The facts ought to be heard; to that end the judgment is reversed.