**AMERICAN AIRLINES, Inc. v.**
**ULEN (two cases).**

Nos. 9921, 9922.

United States Court of Appeals
District of Columbia Circuit.

Argued May 12, 1949.

Decided Sept. 26, 1949.

Mr. G. Bowdoin Craighill, Washington, D. C., with whom Messrs. John S. Flannery, A. Murray Preston and Richard W. Galiher, all of Washington, D. C., were on the brief for appellant.

Mr. H. Mason Welch, Washington, D. C., with whom Messrs. John R. Daily and Mr. J. Harry Welch, Washington, D. C., were on the brief for appellees.

Before CLARK, WILBUR K. MILLER, and PRETTYMAN, Judges.

CLARK, Judge.

Appellant, American Airlines, Inc., a certified carrier engaged in the business of transporting passengers for hire, separately appeals from two final judgments of the District Court. The appeal in No. 9921 attacks the judgment based upon a jury verdict for $25,000 in favor of appellee, Violet Ulen, for personal injuries and property damage. The appeal in No. 9922 was taken from a judgment based on a jury verdict for $2,500 in favor of appellee, Francis Graeme Ulen, husband of Violet Ulen, for medical and other expenses resulting from his wife's injuries and for loss of her services. These two appeals were consolidated for the purpose of filing briefs and for hearing and decision by order of this court dated July 24, 1948. Accordingly, this opinion shall dispose of both appeals.

At about midnight on February 22-23, 1945, Violet Ulen boarded appellant's plane at Washington National Airport with a ticket entitling her to transportation to Mexico City, Mexico. The plane took off from Washington at 12:15 A.M. on February 23, 1945. At approximately 2:25 A.M. that morning, appellant's plane, with Violet Ulen aboard, crashed close to the summit of Glade Mountain near the town of Rural Retreat in Southwest Virginia. This crash, in which both the pilot and the copilot of the plane lost their lives, resulted, admittedly, in very serious and aggravated injury to Violet Ulen and in her permanent partial disability.

On January 11, 1946, the Ulens both filed complaints in the District Court alleging that their injuries and losses directly resulted from the negligence of agents of the appellant in carelessly planning and approving the flight and in unskillfully operating the plane. The complaint filed by Violet Ulen sought recovery in the amount of $257,500. Mr. Ulen's complaint asked for $50,000 in damages. Appellant carrier answered both complaints by admitting the facts alleged but denying that the injuries were caused by its negligence and disclaiming any knowledge of the extent of Violet Ulen's injuries. Thereupon the Ulens served a set of 55 interrogatories on appellant and these were answered in detail by appellant. The Ulens then filed motions for summary judgment in their favor and to impanel a jury for the purpose of determining damages. As grounds for these motions the Ulens asserted that the pleadings together with the carrier's answers to the interrogatories demonstrated that there was no genuine issue as to any material fact except as to damages. After these motions for summary judgment came on for oral argument in the court below, appellant carrier filed a motion for leave to amend its answers to the complaints by including additional defenses. At the same time appellant filed its opposition to the motions for summary judgment. On July 14, 1947, Judge Morris entered a memorandum opinion in which he indicated his intention of granting the motions for summary judgments in favor of the Ulens, but in which he also indicated that decision on the motions would be continued in order to allow the filing by the carrier of an amended answer. A court order to that effect was entered below and appellant filed its amended answer which added the additional defense that Violet Ulen was a passenger in international transportation within the purview of the

Warsaw Convention,[1] and hence that total recovery, if any, is limited thereby to the sum of $8,291.87.[2]

On November 12, 1947, the motions for summary judgment were granted and the cases were assigned for inquisition by a jury as to the amount of damages. The court expressly reserved the defense based upon the Warsaw Convention for disposition by the court at the time of such inquisition. In April, 1948, the two cases were tried together before a jury. Defendant-appellant moved for directed verdicts both at the close of plaintiffs' case and at the close of all the evidence, but said motions were overruled. The jury then returned verdicts for Violet Ulen in the amount of $25,000 and for her husband in the amount of $2,500 and judgments thereon were entered. Following the denial of various other motions of the carrier, separate appeals were taken from those judgments.

Appellant raises two major issues on these appeals which shall be dealt with separately herein. First, appellant asserts that plaintiff-appellees were not entitled to summary judgment. Second, it is vigorously urged that, if there is any liability at all, it is definitely limited in amount by the applicable provisions of the Warsaw Convention.

Appellant's first point is that summary judgment was erroneously granted, and to its great prejudice, because the *pleadings* (that is, the complaint alleging negligence and the answer as amended denying any negligence) raised genuine issues as to material facts which could only have been properly determined by a trial on the merits. Thus far, we have no difficulty in agreeing with appellant and, in fact, appellees concede that this contention, so far as it goes, is correct. However, it is vitally significant that *before* summary judgment was granted the trial judge had before him not only the complaint and the answer as amended but also the 55 interrogatories of plaintiffs and all of defendant's detailed, sworn answers thereto as well as a lengthy "Defendant's Brief in Opposition to Motion for Summary Judgment." Appellant contends in our court, as it contended below, that the interrogatories and answers thereto could not properly be used as a basis for the awarding of summary judgment. In support of that contention appellant cites the case of Town of River Junction et al. v. Maryland Casualty Co.,[3] a two-to-one decision of the Fifth Circuit Court of Appeals, wherein interrogatories were said to be exploratory and not depositions to be considered on summary judgment. However, as pointed out by the court below, in the River Junction case "the interrogatories rejected as the basis for a summary judgment were propounded to officers of two of the defendants without notice or opportunity of either of said defendants 'to cross the interrogatories asked the other.' "[4] It was also pointed out below that a subsequent Fifth Circuit opinion,[5] written by the same circuit judge who wrote the River Junction opinion, stated that "admissions and interrogatories are in the nature of evidence" and that they "may be considered on a motion for summary judgment under Rule 56 [Fed.Rules Civ.Proc. 28 U.S.C.A.]."[6] Although our search of the authorities fails to reveal a single case in this jurisdiction directly in point on this

1. 49 Stat. (Part 2) 3000 (1929).

2. Under Article 22 of the Warsaw Convention the liability of the carrier for each passenger was limited to the sum of 125,000 francs. It is agreed by the parties to this appeal that the figure above is the equivalent, in United States currency, of $8,291.87.

3. 5 Cir., 1940, 110 F.2d 278, certiorari denied, 1940, 310 U.S. 634, 60 S.Ct. 1077, 84 L.Ed. 1404.

4. D.C., 7 F.R.D. 371, 375.

5. Kohler et al. v. Jacobs et al., 5 Cir., 1943, 138 F.2d 440. See also, Holtzoff, New Federal Procedure and the Courts (1940), pages 143–4, wherein answers to interrogatories are expressly mentioned as one of several valid bases for consideration in ruling on a motion for summary judgment.

6. 138 F.2d at page 441.

issue,[7] a survey of the decisions of other federal courts clearly discloses unanimity in the holding that interrogatories and answers thereto may properly be considered when ruling on a motion for summary judgment.[8] We believe this to be an entirely reasonable and proper rule, particularly when answers to interrogatories must be in writing and under oath,[9] and one which we accordingly adopt.

The answers to the interrogatories which Judge Morris had before him in this case show undeniably that appellant was negligent. The answers show that appellant's authorized and experienced agents planned, agreed upon, and were in the process of executing, a flight plan which called for the plane to fly at an altitude of 4000 feet on the leg of the flight on which the accident occurred (Pulaski to Tri-City). From the flight log kept by the pilot during this particular flight it is clear that he was following this flight plan up to the time of his last entry. The last radio contact with the plane while in flight was received at 2:05 A.M. (about 20 minutes before the crash) when the pilot reported his altitude as 4000 feet. At the time this flight was planned and flown there was in effect a Civil Air Regulation Promulgated by the Civil Aeronautics Board which read as follows:

"No scheduled air carrier aircraft shall be flown at an altitude of less than 1000 feet above the highest obstacle located within a horizontal distance of 5 miles from the center of the course intended to be flown, * * * *."[10]

The answers to the interrogatories show further that appellant's plane crashed at an elevation of 3910 feet near the summit of Glade Mountain which was located near the center of Green Airway No. 5, a strip ten miles wide over which the plane was scheduled to, and did, fly. The answers admit that a certain chart apparently in appellant's possession indicates that "the terrain [Glade Mountain] is more than 3500 ft. high but less than 4000 ft. above sea level."

We have no difficulty in finding, as did the lower court, that negligence and proximate cause were sufficiently established so as to justify entry of summary judgment in favor of appellees subject only to a determination of the amount of damages and the applicability of the Warsaw Convention.

Appellant's second major contention is that, because of the applicability of the Warsaw Convention, appellant's liability is limited to the sum of $8,291.87.[11] This Convention, to which the United States was not a signatory but to which, pursuant to Presidential Proclamation,[12] this country adheres, applies to "all international transportation of persons, baggage, or goods performed by aircraft for hire."[13] In the view which we take of this case it is unnecessary for this court to decide whether or not the Convention applies since the result would be the same either way. Assuming, without deciding, that the Convention does apply here, we are of the opinion that one of the Articles of the Convention itself precludes appellant's claim of limited liability in this case. Article 25(1) of the Convention as it appears in the official translation from the original French reads as follows:

"The carrier shall not be entitled to avail himself of the provisions of this con-

7. With the exception of the ruling of the trial judge in the instant case. See footnote 4, supra.

8. Gasifier Mfg. Co. v. Ford Motor Co., D.C.E.D.Mo.1939, 1 F.R.D. 10, appeal dismissed, 8 Cir., 116 F.2d 498; Continental Illinois Nat. Bank & Trust Co. of Chicago v. Ehrhart, D.C.E.D.Tenn.1940, 1 F.R.D. 199; Munoz v. Merchants' Nat. Bank of Allentown, D.C.E.D.Pa.1943, 49 F.Supp. 588; and Russell v. Barnes Foundation, D.C.E.D.Pa.1943, 50 F.Supp.

174. See also, Batemore, Inc., v. Standard Brands, D.C.W.D.Mo.1947, 7 F.R.D. 455, as to the nature and purpose of interrogatories.

9. Rule 33, F.R.C.P.

10. Civil Air Regulation 61.7401, effective May 7, 1943, 8 Fed.Reg. 6589.

11. See footnote 2, supra.

12. 49 Stat. (Part 2) 3013.

13. Article 1 of the Convention.

vention which exclude or limit his liability, *if the damage is caused by his wilful misconduct or by such default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be equivalent to wilful misconduct.*[14] (Emphasis supplied.)

The words "wilful misconduct" as they twice appear in the language quoted above were represented in the original French of the Convention by the word "dol." Appellant vigorously urges that the word "dol" was improperly translated and that properly translated it means "fraud" or "deceit." As we understand appellant's argument, the carrier must be guilty of well-nigh criminal intent before Article 25(1) has application. Stated somewhat differently, it is appellant's claim that its liability, if any, is limited unless it can be successfully shown that the pilot, or other agents of appellant, with malicious or felonious intent, planned to fly the plane into the mountain to the injury of its passengers. We cannot agree that the language of Article 25 quoted above goes, or was intended to go, this far.

Appellant has gone to the trouble of having translated (by a translator of its own selection) a portion of the official minutes of the Conference which later formulated the Convention. We see nothing in these minutes which would justify a holding that the official translation of "dol" into "wilful misconduct" is incorrect. Those minutes show little more than that the delegates were at the time in disagreement as to what terms would express their intent when translated into various languages. In fact, one statement by an English delegate to the Conference lends force to appellees' claim that the term is properly translated. That delegate said:

"We have in English the expression 'wilful misconduct'. I think that it covers all that you want to say; it covers not only the acts accomplished deliberately, but also acts of insouciance, without concern for the consequences."

We, therefore, see no basis for questioning the correctness of the official translation as quoted above. The problem thus becomes one of deciding whether the trial judge properly applied the "law of the court to which the case is submitted" when, in his charge to the jury he said as follows:

"Now, wilful misconduct is not, as I have said, merely misconduct, but wilful misconduct. So if the carrier, or its employees or agents, wilfully performed any act with the knowledge that the performance of that act was likely to result in injury to a passenger, or performed that act with reckless and wanton disregard of its probable consequences, then that would constitute wilful misconduct; and if the result of that wilful misconduct was injury to Mrs. Ulen, then her recovery would not be limited by this sum of some eight thousand dollars.

\* \* \* \* \* \*

"Now, the mere violation of those [safety rules and regulations], \* \* \* even if intentional, would not necessarily constitute wilful misconduct, but if the violation was intentional with knowledge that the violation was likely to cause injury to a passenger, then that would be wilful misconduct, and likewise, if it was done with a wanton and reckless disregard of the consequences."

We are of the opinion that this charge to the jury was substantially correct and that there was ample evidence upon which the jury could base its verdict, finding appellant guilty of wilful misconduct. One recent federal court decision defines the term as follows: " 'Wilful misconduct' means a deliberate purpose not to discharge some duty necessary to safety."[15] This definition squarely fits the facts in the instant case. The obvious and sole purpose of Civil Air Regulation 61.7401, supra, is safety. It imposed a duty upon all scheduled carriers which appellant deliberately, knowingly and intentionally violated. Appellant attempts to excuse itself by

14. 49 Stat. (Part 2) 3020.

15. Circuit Judge Minton in Rowe v. Gatke Corporation, 7 Cir., 1942, 126 F.2d 61, 66.

stating that the "center of the course intended to be flown" is not the same as the center of the airway and by arguing that it was possible for the airplane, by zigzagging first to the right of the airlane and then to the left, to fly at 4000 feet and still stay more than five miles distant from and 1000 feet above the highest obstacle and thereby comply, appellant says, with Regulation 61.7401. We need not pass upon the technical distinction between "center of the course" and "center of the airway," because, even adopting appellant's theory, the evidence clearly establishes a deliberate violation of the safety regulation.

The flight plan, drawn up, approved, and partially executed by appellant's admittedly experienced and otherwise qualified personnel, indicates that the "course intended to be flown" by this plane from Pulaski to Tri-City (the leg of the flight on which the accident occurred) was 246 degrees magnetic. The aeronautical chart [16] introduced in evidence at the trial shows Glade Mountain to be 4080 feet in elevation and lying very close to the center of the *airway* over which this plane was to fly. That chart also shows clearly that a plane proceeding at an altitude of 4000 feet from Pulaski toward Tri-City on a magnetic bearing of 246 degrees—*the course intended to be flown*—would pass *within 1½ miles, or at most 2 miles, from Glade Mountain, a mountain 4080 feet high!* Under these circumstances, it requires no stretch of the imagination whatever to visualize what *could* happen and what *did* happen in this case. Appellant's case is only weakened by its proof that the same pilot had flown this same route in the same manner several times before. This is only evidence of deliberateness and full knowledge which renders appellant's actions the more reprehensible. One further fact of record cannot escape note. In appellant's answers to the interrogatories it made the astonishing admission that "We do not know the official elevation of Glade Mountain." From the foregoing it is evident that wilful misconduct in planning and executing this flight has been completely and conclusively shown in this case. Finally, there is nothing in either the flight plan or the flight log of this plane to show that the zigzag course, which appellant now argues would safely carry the plane through the mountains in compliance with Regulation 61.7401, was ever contemplated or attempted in the case of this flight. The fact that there might have been a safe way to fly this flight over this route cannot help this appellant where all the evidence of record shows indisputably that an obviously unsafe method was employed and planned.

■ It follows that the Warsaw Convention, by its own terms, is inapplicable and does not operate to limit appellant's liability in these cases. Both judgments appealed from in these cases must be, and are. hereby

Affirmed.

16. Winston-Salem Sectional Aeronautical Chart, dated September 16, 1943. This chart, the only one in the record before us, bears a different date and is apparently different from the one referred to by appellant in its answers to interrogatories.