294 F.2d 415
 Ethel BROWN and Harry Brown, Appellees-Plaintiffs,
v.
Hugh BULLOCK, Arthur F. Burns, Robert E. Clark, Grayson
Kirk, Frank Pace, Jr. and Calvin Bullock, Ltd.,
Appellants-Defendants and Nathaniel P. Hill, John M. Hincks,
Harris J. Nelson, Maxwell D. Taylor and Dividend Shares,
Inc., Defendants.
 No. 404, Docket 26948.
 United States Court of Appeals Second Circuit.
 Argued May 22, 1961.
Decided Sept. 5, 1961.
 
 David W. Peck, New York City (Sullivan & Cromwell, Alfred Jaretzki, Jr., and Marvin Schwartz, New York City, on the brief), for appellants-defendants Hugh Bullock, Robert E. Clark and Calvin Bullock, Ltd.
 Harold L. Smith, New York City (Hughes, Hubbard, Blair & Reed and Francis C. Reed, New York City, on the brief), for appellants-defendants Arthur F. Burns, Grayson Kirk and Frank Pace, Jr.
 William E. Haudek, New York City (Pomerantz, Levy & Haudek, Rosenfeld & Silverman and Rosenthal & Gurkin, New York City, on the brief), for appellees-plaintiffs.
 Walter P. North, Gen. Counsel, Securities and Exchange Commission, Washington, D.C. (Meyer Eisenberg and George P. Michaely, Jr., Washington, D.C., on the brief), for Securities and Exchange Commission as amicus curiae.
 Before the Court in banc LUMBARD, Chief Judge, CLARK, WATERMAN, MOORE, FRIENDLY and SMITH, Circuit Judges.
 FRIENDLY, Circuit Judge.
 
 
 1
 Plaintiffs-appellees in this action in the District Court for the Southern District of New York are stockholders of defendant Dividend Shares, Inc., hereafter the 'Fund,' a Maryland corporation having its principal office in New York City. The Fund is registered under the Investment Company Act of 1940, 15 U.S.C.A. 80a-1 et seq., as a diversified open-end management investment company. The individual defendants are the directors of the Fund; two of them, Bullock and Clark, are also officers and directors of Calvin Bullock, Ltd., hereafter the Management Company, also a defendant, which is the Fund's investment adviser and principal underwriter and sole distributor.
 
 
 2
 The amended complaint, summarily stated, charges that the Fund has been harmed by payments to the Management Company under the investment advisory contract and the underwriting contract, that are claimed to have violated various provisions of the Investment Company Act, some of which will be discussed below. It alleges also that since prior to 1955 the election of directors of the Fund was procured by proxy statements that violated Rule X-- 14a-9, 17 C.F.R. 14a-9, promulgated by the Securities and Exchange Commission pursuant to 14(a) of the Securities Exchange Act of 1934, 15 U.S.C.A. 78n(a), applicable here by virtue of 20(a) of the Investment Company Act, 15 U.S.C.A. 80a-20(a), and the Commission's Rule 20a-1, 17 C.F.R. 270.20a-1; the reason alleged for this is that the proxy statements said the investment advisory arrangements between the Fund and the Management Company were 'similar to the arrangements' between the latter 'and five other companies,' two of which were intended to be the Bullock Fund, Ltd. and Nation-Wide Securities Company, Inc., whereas in fact they differed in that the fees charged the two latter were 1/4 of 1% of net assets but those charged the Fund were 1/2 of 1% of the first $100,000,000 of net assets and 1/4 of 1% of the excess. This, it is claimed, voided the election of directors in general and their annual extensions of the investment advisory contract, 15(a) and 47(b), 15 U.S.C.A. 80a-15(a) and 80a-46(b), in particular, and caused the Fund's shareholders to fail to exercise their statutory right, 15(a)(3), to terminate the contract or seek its renegotiation. The complaint concludes with allegations, designed to meet F.R.Civ.Proc. 23(b), 28 U.S.C., as to futility of demand on the directors and lack of necessity for and futility of demand on the shareholders.
 
 
 3
 Defendants moved to dismiss for failure 'to state a claim under the Constitution, laws or treaties of the United States * * * (or) upon which relief can be granted under the Investment Company Act of 1940, 15 U.S.C. 80(a) (80a-1 et seq.) and, to the extent the amended complaint purports to state a representative claim, for failure to state a claim on which relief can be granted * * *' Judge Herlands denied the motion in an extensive opinion, 194 F.Supp. 207. Later, without 'serious objection' from the plaintiffs and with none from the Securities and Exchange Commission, which had been allowed to appear as amicus in support of federal jurisdiction, as it has here, the judge resettled his order to include the certification specified in 28 U.S.C. 1292(b). This Court, Judge Clark disagreeing, granted leave to appeal under that section, believing that determination in limine of the issue of Federal jurisdiction, an issue of first impression in this Circuit, was desirable in order to avoid a lengthy trial which would be futile if such jurisdiction did not exist, and also that such a determination was likely to have precedential value for a large number of other suits against directors of registered investment companies now pending in the Southern District, see Chabot v. National Securities & Research Corp., 2 Cir., 1961, 290 F.2d 657, 659-660.[1] Since the issue was novel and of public as well as private importance, we also voted that the appeal should be heard in banc.
 
 
 4
 In addition to the general federal question grant of 28 U.S.C. 1331, section 44 of the Investment Company Act, 15 U.S.C.A. 80a-43, entitled 'Jurisdiction of offenses and suits,' expressly vests the district courts with jurisdiction 'of * * * violation(s) of, this subchapter or the rules, regulations, or orders thereunder,' this presumably referring to proceedings by the Commission under 36 and 42 and to criminal prosecutions, and also 'concurrently with State and Territorial courts, of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this subchapter or the rules, regulations, or orders thereunder.' Appellants disclaim any contention 'that plaintiffs would have no federal remedy were thet to allege injury caused by violation of the Act,' even though the Act does not expressly create a private claim for such violations, a disclaimer justified, inter alia, by statements in Schwartz v. Eaton, 2 Cir., 1959, 264 F.2d 195, 198 cf. Reitmeister v. Reitmeister, 2 Cir., 1947, 162 F.2d 691, 694. On the other side, appellees, if we understand aright, do not argue that every transgression by directors of a registered investment company necessarily gives rise to a federal claim. Cf. Pan American Petroleum Corp. v. Superior Court, 1961, 366 U.S. 656, 81 S.Ct. 1303, 6 L.Ed.2d 584. Holding, as we do, that violations of two sections of the Investment Company Act are sufficiently alleged, we find it unnecessary to pass on much that was said by the District Judge or to explore other grounds of federal jurisdiction asserted by appellees and found in their favor by him,-- at least one of which, that based on the allegedly false or misleading proxy statements, bristles with difficulties, see Howard v. Furst, 2 Cir., 1956, 238 F.2d 790, certiorari denied 1957, 353 U.S. 937, 77 S.Ct. 814, 1 L.Ed.2d 759; Dann v. Studebaker-Packard Corp., 6 Cir., 1961, 288 F.2d 201, and had better be resolved, should resolution be required, with the fuller development of the facts that will come froma trial.
 
 
 5
 (1) Section 37 of the Act, 15 U.S.C.A. 80a-36, provides:
 
 
 6
 'Sec. 37. Whoever steals, unlawfully abstracts, unlawfully and willfully converts to his own use or to the use of another, or embezzles any of the moneys, funds, securities, credits, property, or assets of any registered investment company shall be deemed guilty of a crime, and upon conviction thereof shall be subject to the penalties provided in section 49. A judgment of conviction or acquittal on the merits under the laws of any State shall be a bar to any prosecution under this section for the same act or acts.'
 
 
 7
 Appellees say that the amended complaint, at least when read with the benevolence appropriate on a motion addressed to the pleadings, sufficiently alleges an unlawful and willful conversion; appellants respond that the complaint alleges merely excessiveness of the fees under the two contracts which, if made out, would be a waste of corporate assets giving rise to liability under Maryland law, but not a conversion within Section 37. Discussion of this demands a somewhat fuller statement of the amended complaint than has yet been made.
 
 
 8
 Although the amended complaint does allege excessiveness of the fees to the Management Company, attaining $921,485 under the investment advisory contract and $403,097 under the underwriting and distribution contract in 1959, it does not stop at that. It alleges that each of the directors of the Fund 'has been selected and nominated as such by defendants Bullock, Clark and the Management Company'; that each director receives substantial compensation for acting as such; that each director also serves as a director for one or more other investment companies supervised by the Management Company from which he receives substantial compensation, again at the selection and nomination of Bullock, Clark and the Management Company; that the directors other than Bullock and Clark are 'beholden' to them and the Management Company for placing them in such positions; that Bullock, Clark and the Management Company 'dominate and control the Board of Directors of the Fund'; that the wrongful transactions alleged were caused by these three defendants and that the others 'participated and acquiesced in such transactions with knowledge or notice of their wrongful character'; that the contracts 'and their respective yearly extensions were not the result of arm's length bargaining, but were adopted as the result of the arbitrary action, collusion, gross negligence or reckless disregard of duty' of the individual defendants and the Management Company; that the directors made no effort to ascertain whether services similar to those supplied by the Management Company could be secured elsewhere on more advantageous terms or whether the Management Company itself could not be persuaded to take less, as it was alleged to have done for investment advisory services with the Bullock Fund and with Nation-Wide and for distribution charges with the latter; and that the fees were 'excessive and out of proportion to the value of the services performed, as the defendants knew or should have known.' Of course, we in no way imply that these serious claims will or will not be made out; whether a federal question is alleged depends upon well-pleaded allegations of the complaint. See Mishkin, The Federal 'Question' in the District Courts, 53 Colum.L.Rev. 157, 164 et seq. (1953). If the proof adduced to support the federal claims does not establish liability under them but does establish a non-federal one, Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, will come into play.
 
 
 9
 Drawing our attention to the title of 37, 'Larceny And Embezzlement,' appellants properly contend that a complaint does not allege a violation of 37 unless its substance would support an indictment; they lean heavily on Mr. Justice Jackson's classic exposition of the requirements of phrases such as 'willful' or, in that case, 'knowing,' 18 U.S.C. 641, in federal criminal statutes, in Morissette v. United States, 1952, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288, as showing the complaint here would not. Appellees strongly urge another aspect of Morissette upon us-- its explanation, 342 U.S. at page 271, 72 S.Ct. at page 254, that knowing conversion was added by 'codifiers of the larceny-type offense' because 'gaps or crevices have separated particular crimes of this general class and guilty men have escaped through the breaches'; the lawmakers included conversion of that sort because they 'wanted to reach' all instances 'under which one may obtain wrongful advantages from another's property.' And, again, 'Probably every stealing is a conversion, but certainly not every knowing conversion is a stealing * * * Conversion * * * may be consummated without any intent to keep and without any wrongful taking, where the initial possession by the converter was entirely lawful. Conversion may include misuse or abuse of property. It may reach use in an unauthorized manner or to an unauthorized extent of property placed in one's custody for limited use,' 342 U.S. at pages 271-272, 72 S.Ct. at page 254.
 
 
 10
 Appellees are thus right in saying it is not fatal that the complaint does not charge 'Larceny And Embezzlement' even though the title of 37 is limited to that; willful conversion was included to cover more territory and therefore ought not be limited to larceny and embezzlement. United States v. Northway, 1887, 120 U.S. 327, 332, 7 S.Ct. 580, 30 L.Ed. 664; and compare 37 with 17(g) of the Investment Company Act, 15 U.S.C.A. 80a-17(g), which speaks only of 'larceny and embezzlement.' On the other hand, appellants are right that a complaint would not allege a violation of 37 by directors (not affiliated with the investment adviser) if, for example, it set forth merely that the adviser was paying itself more than the contract provided and the non-affiliated directors had negligently failed to prevent or detect this. However, the complaint here goes well beyond that.
 
 
 11
 We should think it clear that a director who had authorized corporate funds to be paid as compensation for services to a person known to him to have rendered none was guilty of knowing or willful conversion in the criminal sense; we would think the same of a director who acquiesced in the payment of an executive's salary to someone he knew to be acting only as an office boy. An indictment charging such a conduct would not be demurrable because the payments were pursuant to a publicized contract; that would simply be an evidentiary matter for the defense, since people do not generally publicize what they know to be criminally wrong. On the other hand, a mere error of judgment as to the worth of an employee's services, even if egregious, would not be a knowing conversion provided the judgment was honest and considered, although the error might lead to civil liability for negligence. The charges in the complaint here go not so far as the first two cases but further than the last.
 
 
 12
 Although when the word 'willfully' is 'used in a criminal statute, it generally means an act done with a bad purpose,' it 'is also employed to characterize a thing done without ground for believing it is lawful (Roby v. Newton, 121 Ga. 679, 49 S.E. 694, 68 L.R.A. 601), or conduct marked by careless disregard whether or not one has the right so to act. (United States v. Philadelphia & R. Ry. Co., (D.C.) 223 F. 207, 210; State v. Savre, 129 Iowa 122, 105 N.W. 387, 3 L.R.A., (N.S.) 455; State v. Morgan, 136 N.C. 628, 48 S.E. 670).' United States v. Murdock, 1933, 290 U.S. 389, 394-395, 54 S.Ct. 223, 225, 78 L.Ed. 381-- something that has been called, in a not unrelated context, 'acts of insouciance, without concern for the consequences,' American Airlines, Inc. v. Ulen, 87 U.S.App.D.C. 307, 186 F.2d 529, 533, see Pekelis v. Transcontinental & Western Air, Inc., 2 Cir., 1951, 187 F.2d 122, 124-25 and footnote 2, 23 A.L.R.2d 1349, certiorari denied 1951, 341 U.S. 951, 71 S.Ct. 1020, 95 L.Ed. 1374; Grey v. American Airlines, Inc., 2 Cir., 1955, 227 F.2d 282, 285, certiorari denied 1956, 350 U.S. 989, 76 S.Ct. 476, 100 L.Ed. 855. Plainly the complaint charges that; indeed, at least when read with the required liberality, Conley v. Gibson, 1957, 355 U.S. 41, 47-48, 78 S.Ct. 99, 2 L.Ed.2d 80; Beacon Theatres, Inc. v. Westover, 1957, 359 U.S. 500, 506, 79 S.Ct. 948, 3 L.Ed.2d 988, it charges more and alleges that the directors were the tools of the Management Company and in truth were acting in its interest rather than in that of the Fund. In fairness to the defendants, we repeat that whether any of this will be proved is not before us; on this motion we are required to look only at the complaint. So viewed, it alleges a violation of 37.
 
 
 13
 ( 2) The complaint also sufficiently states a claim under 15(a) and (b), 15 U.S.C.A. 80a-15(a) and (b). These provisions make it unlawful to act as investment adviser or as principal underwriter of a registered investment company for more that two years after the execution of a contract to that end, unless continuance of the contract 'is specifically approved at least annually by the board of directors or by vote of a majority of the outstanding * * * securities of such company.'[2] We have heretofore summarized the allegations of the complaint as to the action of the directors in voting these annual extensions.
 
 
 14
 Appellees contend that 15 requires not merely ceremonial performance of the act of approval but its performance in a meaningful fashion, and that breach of the latter requirement creates a federal claim as breach of the former unquestionably does. They rely particularly on Baird v. Franklin, 2 Cir., 1944, 141 F.2d 238, 244, certiorari denied 1944, 323 U.S. 737, 65 S.Ct. 38, 89 L.Ed. 591, and specifically upon the majority's concurrence in Judge Clark's statement that 6(b) of the Securities Exchange Act, 15 U.S.C.A. 78f(b), imposed upon a stock exchange not only the duty 'of enacting certain rules and regulations,' which it plainly did, but also 'of seeing that they are enforced,' and that a person might sue the exchange for any injury sustained as a result of its failure to do that. Appellants would distinguish Baird v. Franklin as dealing with a new federally imposed duty on stock exchanges; they say that all Congress has done in 15(a) and (b) is to require annual action by directors, standards for whose performance of that action or any other have long been prescribed by state law, and there is thus no reason to suppose that Congress meant to create any different standard.
 
 
 15
 Appellants' argument fails to give adequate weight to the general scheme of the Investment Company Act and the Findings and Declaration of Policy of 1, 15 U.S.C.A. 80a-1. Subsection (a) of 1 finds 'that investment companies are affected with a national public interest' on various grounds therein stated; subsection (b)(1) declares that the national public interest and the interest of investors are adversely affected 'when investment companies are organized, operated, managed * * * in the interest of * * * investment advisers * * * (or) of underwriters.' The section concludes with a further declaration 'that the policy and purposes of this subchapter, * * * in accordance with which the provisions of this subchapter * * * shall be interpreted, are to mitigate and, so far as feasible, eliminate the conditions enumerated in this section which adversely affect the national public interest and the interest of investors.' When Congress mandated annual approval of investment advisory and underwriting contracts, it must have been concerned with the substance and not simply with the form. It would scarcely seem consistent with the declared Congressional purpose to hold that although a federal court would have jurisdiction of a complaint alleging that the directors' approval had come a few days late, or that notice of the directors' meeting had been defective in some formal respect, the court lacks jurisdiction over a complaint alleging that the directors' approval was given without any real consideration of the merits. It is similarly unreasonable to suppose that Congress would have wished to permit its purpose to protect investors in all investment companies using the mails or the means of interstate commerce to be frustrated if a particular state of incorporation should be satisfied with lower standards of fiduciary responsibility for directors than those prevailing generally.[3] See Mishkin, supra, at page 195. Indication of Congressional intent to create a body of federal law giving rise to a distinctive federal claim has been found from evidence less compelling than here, Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972. We think 15(a) and (b) laid down a requirement of annual approval not merely formal but substantial, the minimum content of which is a matter of federal law; hence a complaint alleging failure to conform to that requirement sets forth a federal claim. See Mr. Justice Frankfurter's dissenting opinion in Textile Workers Union v. Lincoln Mills, supra, 353 U.S. at pages 476-477, 479, 483-484, 77 S.Ct. 912, 1 L.Ed.2d 972.
 
 
 16
 Appellants have cited to us Brouk v. Managed Funds, Inc., 8 Cir., 1961, 286 F.2d 901, certiorari granted 366 U.S. 958, 81 S.Ct. 1921, appellees seek to distinguish it as holding only that directors of registered investment companies are not liable as insurers. The opinion does contain some language of that sort, 286 F.2d at page 918, but we are by no means certain the decision is adequately distinguished on that ground. So far as it is not, we must respectfully disagree, to the extent indicated herein.
 
 
 17
 The order denying the motion to dismiss is affirmed and the stay of proceedings dissolved.
 
 
 18
 CLARK, Circuit Judge (concurring in the result).
 
 
 19
 When my brothers granted leave for this interlocutory appeal I dissented, stating my fear that it would amount only to an exercise in pleading. Appellants' lawyerlike concession, then indicated and now made explicit, that upon proper showing private persons might have a federal remedy for violation of the Investment Company Act would, I thought, leave for this appeal only questions whether the allegations of the complaint were sufficiently pointed. And since an experienced trial judge had found the allegations sufficient, there was little reason to suppose that we would ask for more. In any event my fears have been realized; none of the interesting questions adverted to in the opinion have been seriously contested and we have had in substance merely an appeal from the overruling of a special demurrer which sought more pleading detail. So this has been not only a grievous waste of time for all of us, but as we pointed out in a similar situation in Gottesman v. General Motors Corp., 2 Cir., 268 F.2d 194, it has put a wholly false emphasis upon pleading niceties, contrary to the basic approach of the Federal Rules of Civil Procedure.[1]
 
 
 20
 Other bizarre results have ensued. Thus there has been (in an endeavor to avoid hopeless duplication of hearings) the rather doubtful compulsion exerted on the parties to forego, at least temporarily, their right to press perfectly proper state litigation forward, as described in footnote 1 of the opinion. And in a brave attempt not to cover too much uncertain territory, the opinion, in an embarrassingly restricted way, disposes of contingencies not yet at hand. Thus the issue as to allegedly false proxy statements may easily acquire disturbing prominence hereafter; and I suspect that some day we shall have to disavow the much criticized case of Howard v. Furst, 2 Cir., 238 F.2d 790, certiorari denied 353 U.S. 937, 77 S.Ct. 814, 1 L.Ed.2d 759, dealing with an earlier statute. See Loss, The SEC Proxy Rules in the Courts, 73 Harv.L.Rev. 1041, 1061 (1960); also 70 Harv.L.Rev. 1493 (1957); 45 Calif.L.Rev. 186 (1957); 105 U. of Pa.L.Rev. 1016 (1957). The real truth is that this case is not ripe for appellate review and our premature remarks are either unapt or superfluous.
 
 
 21
 The waste occasioned by this and other appeals under the new statute suggests that permanent gain in adjudication can be achieved only when the order under review shows some element of permanent and final decision. And since there are adequate provisions now on the books for interlocutory appeals covering the cases having some measure of finality, see 28 U.S.C. 1292(a) and F.R. 54(b), particularly as now amended, it seems probable that this wide grant of review will become even more limited to attacks on pleadings. I suggest that experience has now shown the statute to be undesirable legislation, and I cite this case as a major illustration. Since it is adequate I am accepting the result achieved by my brothers, but I believe it would have been more fitting had we now dismissed the appeal as improvidently allowed.
 
 
 22
 LEONARD P. MOORE, Circuit Judge (dissenting).
 
 
 23
 Plaintiffs claim Federal court jurisdiction under the Investment Company Act of 1940, 15 U.S.C.A. 80a-1 et seq. and under principles of pendent jurisdiction. Passing by the stereotype allegations of interlocking managements and directorates, domination and control always present in stockholders' suit, the amended complaint sets forth a series of alleged wrongs which can be condensed and summarized:
 
 
 24
 1. The Management Company charged the Fund a larger amount for investment advisory services than it charged two other investment companies.
 
 
 25
 2. Fees charged based on a fixed percentage of net assets were grossly unfair because as the Fund's assets increased, the fee increased.
 
 
 26
 3. The fee contracts were not the result of arm's length bargaining but were adopted as a result of arbitrary action, collusion, gross negligence or reckless disregard of duty and the fees were excessive.
 
 
 27
 4. No efforts were made elsewhere to secure advisory services on more favorable terms or to persuade the Management Company to supply its services on such terms.
 
 
 28
 5. The management Company as principal underwriter and sole distributor charged purchasers of shares an excessive sales load.[1]
 
 
 29
 These acts, it is alleged, constituted an unlawful and willful conversion by defendants of assets of the Fund to the use of the Management Company in violation of Section 37 of the Act. Gross abuse of trust, willful malfeasance and bad faith in violation of Sections 1(b)(2), 10, 15, 17(h, i) and 36 are also charged as well as waste of assets in violation of New York and Maryland laws. Allegedly untrue proxy statements in violation of Sections 20(a) and 34(b) of the Act and S.E.C. Rules are claimed to vitiate the directors' elections and, hence, render the advisory contracts void. Because of such misrepresentations, it is also claimed that the shareholders failed to exercise their right to terminate the contract or to seek renegotiation.
 
 
 30
 The only issue presented on the motion to dismiss is: does the amended complaint state a cause of action and, if so, has a federal court jurisdiction? 'The plaintiffs do not contend that, where there are grounds for a derivative stockholders' action, the case involves a 'federal question' simply because the corporation is a registered investment company.' In fact, they 'recognize that a stockholder's derivative action, even through otherwise well founded, cannot be brought in the federal court merely because the corporation is a registered investment company. Such a company may have a non-federal claim, e.g., for breach of contract, mismanagement or simple negligence. It is undisputed that, under such circumstances, neither the company itself nor a stockholder on its behalf can take that claim into the federal forum' (194 F.Supp. 207, 220).[2] To sustain jurisdiction, the majority hold that 'violations of two sections of the Investment Company Act are sufficiently alleged,' i.e., Sections 37 and 15(a) and (b).
 
 
 31
 Section 37 definitely relates to crime. He who 'steals, unlawfully abstracts, unlawfully and willfully converts to his own use or to the use of another, or embezzles any of the moneys, funds, * * * of any registered investment company shall be deemed guilty of a crime, * * *' Sandwiched in between stealing and embezzlement the conversion obviously intended has attributes far different from that type of conversion found on the civil side of court. Certainly ejusdem generis brings it into the criminal fold. To me it is significant that the complaint alleges no facts which might support its conclusions of 'excessive,' 'unlawful' and 'illegal.' Even the majority concede that there would be no violation of 37 'unless its (the complaint's) substance would support an indictment.' If this be the test, what is alleged? Surely the making of a contract which fixes the fee on the basis of a percentage of fixed assets is not a criminal act. Congress itself in the Investment Advisers Act of 1940 (Aug. 22, 1940, c. 686, Title II, 205, 54 Stat. 852) recognized this very method as lawful and provided that 'Paragraph (1) of this section shall not be construed to prohibit an investment advisory contract which provides for compensation based upon the total value of a fund averaged over a definite period, or as of definite dates, or taken as of a definite date' (15 U.S.C.A. 80b-5). Were it otherwise, a trial court might be burdened with days of testimony from witnesses who will testify that it costs no more in research effort to buy 100 shares of stock than 1,000. The chief executive of a hundred million dollar corporation may receive compensation ten times that of a similar executive in a million dollar corporation but is he thereby indictable for so receiving it? To establish its claim that defendants failed to shop around for cheaper advisory services and could have obtained lower rates, no great imagination is required to prophesy that plaintiffs will be able to call dozens of witnesses each of whom will say that they would gladly have given their investment advice at much lower rates. And with the advantage of hindsight, they will probably add that their advice would have been much better. Illustrative of how remote the allegations are from the requisites of a crime is the majority's example of a director acquiescing in the payment of an executive's salary to someone he knows is acting only as an office boy. This they hold would be criminal. This very example, in my opinion, is equally illustrative of the defects of the complaint. To sustain such an allegation, plaintiffs would have to call witnesses who would testify that they saw the company's president enter his president's office in the morning and, thereafter, during the day had observed him filling inkwells, delivering messages, running errands and stamping mail. Or possibly in reverse order, the cashier would testify that Johnny Jones, the office boy, received a salary of $100,000. If such situations were alleged, it is very likely that defendants would be able to plead some defense against these charges. If plaintiffs assume the risk of supporting their jurisdiction on 37, they should also have to assume the burden of alleging and proving acts which come within 37. In my opinion, there is not a single allegation as to waste and mismanagement which is not standard 'boiler plate' in the ordinary State Stockholders' derivative action and no allegation which would qualify as sufficient under 37.
 
 
 32
 In all likelihood, years later this case will be returned to us vastly increased by thousands of pages of record. It can only be hoped that some wise and discerning trial judge by pre-trial or trial rulings will winnow the evidentiary wheat from the chaff, the office boys from the presidents, and the we-would-like-to-get-the-account seekers from those in possession of the business. Carried to its logical conclusion, investment trust managers would have to seek declaratory judgments in advance of concluding contractual arrangements with any advisory service and with their officers and to ask the courts to fix the proper amount of the sales load of the shares. Otherwise the federal courts at the behest of any stockholder whose views differed from those of the management would be called upon to express their own judgments as to how the businesses should have been operated.
 
 
 33
 Nor can I join the majority in characterizing as 'serious claims' allegations that the directors have been 'selected and nominated' by certain defendants; that they receive compensation; and serve on other boards. Directors are usually selected by and known to management; they are not self-appointed strangers. There is no charge that such a method of selection is illegal. Director compensation surely is not a basis for a cause of action and there is no claim that interlocking directorates are proscribed. The words 'beholden,' 'dominate' and 'control' are meaningless unless buttressed by actionable facts which are completely lacking.
 
 
 34
 Furthermore, I would not wish to place a stamp of approval on permitting litigants to use the federal courts absent a federal case on the theory taht as long as the litigants are there they might as well try their State court action. If there is to be 'pendent' jurisdiction, it ought to be pendent from a case more tangible than one which has no federal basis.
 
 
 35
 The trial court also found jurisdictional support in the'preamble' section of the Act (15 U.S.C.A. 80a-1). 194 F.Supp. 207, 218. Law by preamble is risky business. The phrases are usually most eloquent and Utopian in character. If this were they law, no sections beyond the preamble would ever be required and every case would be decided on an ad hoc basis, resting firmly upon some praiseworthy concept of justice. Experience, however, teaches that it is the sections that follow that create the rights, duties and liabilities imposed by the legislation upon the persons acting and relying thereon. Were it sufficient to state a claim merely to allege stock ownership in an investment trust and that there are conditions to be eliminated 'which adversely affect the national public interest and the interest of investors,' then much of the complaint is surplusage.
 
 
 36
 The other sections which the majority hold to be sufficient are 15(a) and (b) (15 U.S.C.A. 80a-15(a) and (b)), which in substance provide for annual renewal approved 'by the board of directors or by vote of a majority of the outstanding voting securities.' The majority say that Congress 'must have been concerned with the substance and not simply with the form.' But these words are merely abstractions without some standard by which to test for substance or form. Is a corporate resolution reading in substance that 'the services having been found to have been satisfactory, be it resolved that the contract be renewed for another year,' legal or illegal? Must the state of mind of each director be explored by examination and cross-examination to ascertain as to each decision made whether 'approval was given without any real consideration of the merits.' If, as suggested by the office boy illustration, there be facts alleged which show fraudulent and illegal conduct, a different situation would be presented but such facts are noticeably lacking. There is no allegation that the fees for advisory services violated any provision of law as to percent or amount. The fact that the Management Company made slightly different charges to other clients establishes no illegality. This is not a Robinson-Patman case. nor is there any requirement that the contract be put up for public bidding. In short, adding up all the adjectives and adverbs of the complaint wherein is there any violation of law alleged?
 
 
 37
 By the decision of the majority, this case will have to go to trial. If the life spans of the case and the court happily coincide we may be able to see the beneficial effects upon society of striking 'fear of personal liability' into the minds of 'potential wrongdoers,' thus compelling them 'to walk in the paths of rectitude'[3] -- paths to be sure which neither Congress nor the courts have laid out with such markers as may be easily discernible by the pedestrian director. There should be more constitutional methods of permitting every stockholder to be a Sir Galahad than this in terrorem approach.
 
 
 38
 I would grant the motion to dismiss with leave to serve an amended complaint alleging facts showing federal jurisdiction and violations of the act.
 
 
 
 [1]
 The grant of leave and an accompanying stay of proceedings were conditioned on appellants stipulating to consent to the striking of a similar action brought by appellees in the Supreme Court of New York from the trial calendar of that court and agreeing to take no steps to restore that action to the calendar until the stay in this proceeding was dissolved. Appellants so stipulated
 
 
 [2]
 The investment advisory contract must also have been initially approved 'by the vote of a majority of the outstanding voting securities of such registered company,' 15(a)
 
 
 [3]
 The force of these considerations is heightened by the pains taken in 10, 15 U.S.C.A. 80a-10, to insure an adequate representation by independent directors
 
 
 [1]
 Incidentally this case demonstrates that the time restrictions on interlocutory appeals hopefully set in Milbert v. Bison Laboratories, 3 Cir., 260 F.2d 431, 435-436, cannot be relied on to be effective, in view of the trial judge's power (as here exercised) to amend an interlocutory order substantially after its entry, to start an interlocutory appeal on its way. See Wright, The Interlocutory Appeals Act of 1958, 23 F.R.D. 199, 208-209
 
 
 [1]
 Such a claim would scarcely be within the scope of this derivative or representative action
 
 
 [2]
 Brown et al. v. Bullock et al
 
 
 [3]
 Brown et al. v. Bullock et al., 194 F.Supp. 207, 246