Richard **LESSLER**, Plaintiff, Appellant,

v.

**Arthur D. LITTLE, et al.,**
**Defendants, Appellees.**

No. 88–1015.

United States Court of Appeals,
First Circuit.

Heard June 10, 1988.
Decided Sept. 21, 1988.

plead fraud with particularity, Fed.R.Civ.P. 9(b). We affirm in part and reverse in part.

Mordecai Rosenfeld, P.C. and Alan E. Bandler, P.C., New York City, with whom Benjamin J. Stein, Amedeo C. Merolla and Asquith, Merolla, Anderson, Ryan & Wiley, Providence, R.I., were on brief, for plaintiff, appellant.

Robert G. Flanders, Jr., with whom Jeffrey C. Schreck, Robert Karmen, Flanders & Medeiros Inc., Paul V. Curcio, John Gyorgy, and Adler Pollock & Sheehan Inc., Providence, R.I., were on brief, for defendants, appellees Narragansett Capital Corp., William P. Considine, John M. Fox, Frederick G. Frost, III, Harlow W. Gage, Norman E. McCulloch, Jr., John R. Rockwell, Harvey J. Sarles, and Rosalie J. Wolf, Narragansett Management Corp., Arthur D. Little, Robert D. Manchester, Gregory P. Barber, Roger A. Vandenberg, Jonathan Nelson, and Geraldine M. McNulty.

John D. Donovan, Jr., with whom Ann Pauly Michalik and Ropes & Gray, Boston, Mass., were on brief, for defendant, appellee Monarch Capital Corp.

Before BOWNES and BREYER, Circuit Judges and CAFFREY,* Senior District Judge.

BOWNES, Circuit Judge.

Richard Lessler appeals the dismissal of his complaint against Narragansett Capital Corporation (Narragansett), Narragansett Management Company (Management Company), Monarch Capital Corporation (Monarch) and various individual defendants who are officers and directors of Narragansett and Management Company. Lessler, as a shareholder of Narragansett and acting on behalf of all shareholders, challenged the sale of Narragansett's assets to Monarch under federal and state securities laws. Adopting the report and recommendation of the magistrate, the district court found that Lessler's complaint failed to state a claim upon which relief could be granted, Fed.R.Civ.P. 12(b)(6), and failed to

* Of the District of Massachusetts, sitting by desig-

## I. BACKGROUND

In reviewing the dismissal, we consider only those facts and allegations set forth in the complaint and must view them in the light most favorable to the plaintiff, Lessler. *Harper v. Cserr*, 544 F.2d 1121, 1122 (1st Cir.1976); *see also Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977). The "accepted rule" is that Lessler's complaint should be dismissed for failure to state claim only if it appears beyond doubt that Lessler can prove no set of facts which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Harper*, 544 F.2d at 1122.

Incorporated in Rhode Island, Narragansett was a closed-end investment company registered under the Investment Company Act of 1940. 15 U.S.C. § 80a–1 *et seq.* Its shares were traded in the over-the-counter market. Management Company, a separate corporation, provided investment advice to Narragansett pursuant to a series of investment advisory contracts. Prior to the events here at issue, the individual defendants in this action attempted to take Narragansett "private," arranging for the sale of Narragansett's assets to themselves and certain other individuals. Such a transaction, however, required approval of the Securities and Exchange Commission, and after Lessler and others opposed the transaction, the individual defendants withdrew the plan.

Subsequently, Narragansett management proposed the sale of Narragansett's assets to Monarch. A proxy statement dated September 19, 1986, was mailed to all shareholders, giving notice of a special shareholders meeting to be held on October 30, 1986, for the purpose of voting on the proposed sale. At the special meeting, the Narragansett shareholders voted to approve. Under the terms of the sale to Monarch, Narragansett shareholders re-

nation.

ceived fifty-five dollars in cash plus approximately one dollar in tax credits for each share of stock owned.

The Monarch–Narragansett agreement also provides that Monarch, which is not a registered investment company, will continue to employ Management Company as its investment adviser. For its services, Management Company will receive a management fee of two percent plus a potential additional one percent based on performance. Management Company will also receive a special fee of twenty percent of the cumulative net profit that Monarch realizes from the disposition of any assets it purchased from Narragansett.

Claiming that the special twenty percent contingent fee effectively constitutes an ownership interest by Management Company in Monarch, and thus in Narragansett, Lessler filed a putative class action on behalf of all Narragansett shareholders in United States District Court for the District of Rhode Island. Lessler's complaint has three counts, based respectively on alleged violations of the Investment Company Act, the Securities Exchange Act of 1934 (1934 Act) and Rhode Island state corporation law.

Lessler argues first that the Monarch–Narragansett transaction violates section 17(a)(2) of the Investment Company Act, which prohibits any "affiliated person" knowingly from purchasing the assets of a registered investment company.[1] 15 U.S.C. § 80a–17(a)(2). Management Company and the individual defendants are concededly "affiliated persons" of Narragansett, *see* 15 U.S.C. § 80a–2(a)(2)–(3), and Lessler claims that Management Company through the sale to Monarch has itself indirectly purchased assets of Narragansett. *See* 15 U.S.C. § 80a–47(a) ("It shall be unlawful for any person, directly or indirectly, to cause to be done any act or thing through means of any other person which it would be unlawful for such person to do under the provisions of this subchapter."). Lessler also alleges that the twenty percent contingent fee constitutes an excessive advisory fee in violation of section 36(b) of the Investment Company Act. 15 U.S.C. § 80a–35(b).[2] Because of the alleged violations of section 17(a)(2) and 36(b), Lessler seeks the following relief under the Investment Company Act: (1) rescission of the Monarch–Narragansett sale contract under section 47(b)(1), 15 U.S.C. § 80a–46(b)(1)[3]; (2) recovery of the excessive advisory fee under section 36(b), 15 U.S.C. § 80a–35(b), and/or an injunction preventing enforcement of the advisory contract; and (3) recovery against the individual defendants for unjust enrichment pursuant to section 47(b)(3)(B), 15 U.S.C. § 80a 46(b)(3)(B) ("This subsection shall not apply ... to preclude recovery against any person for unjust enrichment.").

1. Section 17(a) provides in pertinent part:

   It shall be unlawful for any affiliated person or promoter of or principal underwriter for a registered investment company ..., or any affiliated person of such a person, promoter, or principal underwriter, acting as principal—

   . . . . .

   (2) knowingly to purchase from such registered company, or from any company controlled by such registered company, any security or other property....

2. Section 36(b) provides in pertinent part:

   For purposes of this subsection, the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser. An action may be brought under this subsection by the [Securities and Exchange] Commission, or by a security holder of such registered investment company on behalf of such company, against such investment adviser, or any affiliated person of such investment adviser, ... for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person.

3. Section 47(b)(1) provides in pertinent part:

   A contract that is made, or whose performance involves, a violation of this subchapter ... is unenforceable by either party ... unless a court finds that under the circumstances enforcement would produce a more equitable result than nonenforcement and would not be inconsistent with the purposes of this subchapter.

Lessler's 1934 Act claim arises under sections 10(b) and 14(a), 15 U.S.C. §§ 78j(b) & 78n(a), and rules 10b–5 and 14a–9 of the Securities and Exchange Commission. 17 C.F.R. §§ 240.10b–5 & 240.14a–9.[4] It relates primarily to Narragansett's proxy statement. Lessler claims that the proxy statement was materially false and misleading in that it characterized Management Company's contract with Monarch as a legitimate investment advisory contract rather than as "a guise and a sham to conceal the true fact that the Management [Company and individual defendants] are diverting to themselves assets of [Narragansett] that belong to all the shareholders." Amended and Supplemental Complaint at 11.

Lessler's state law claim alleges a breach of fiduciary duty by the individual defendants in approving a sale which "diverted" twenty percent of Narragansett's assets to Management Company. Amended and Supplemental Complaint at 17. As a result of this breach, Lessler asserts, Narragansett shareholders received less than the full and fair price for their shares in the sale to Monarch. Lessler also argues that Monarch is liable under state law as an aider and abettor of the other defendants in their breach of fiduciary duty.

All defendants moved to dismiss Lessler's complaint and the motions were referred to the magistrate by the district court. The magistrate recommended that Lessler's complaint be dismissed in its entirety. *Lessler v. Little,* No. 86–0639P (D.R.I. Sept. 29, 1987) (Report). With respect to Lessler's Investment Company Act claims, the magistrate drew a bright line distinction between the sale of Narragansett's assets to Monarch and the advisory agreement between Monarch and Management Company, which he characterized as "[i]ndependent of and subsequent to" the purchase. Report at 3. Noting that only Management Company and not Monarch was an "affiliated person," the magistrate held that, considered in isolation, Narragansett's sale to Monarch was not a violation of section 17(a)(2). The magistrate also found that Monarch's contingent com-

---

4. Section 10(b) provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\* \* \* \* \* \*

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Section 14(a) provides:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

Rule 10b–5 provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

Rule 14a–9 provides in pertinent part:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false and misleading.

pensation arrangement with Management Company did not "as a matter of law transform [Management Company] into [a purchaser] of Narragansett property" because the compensation agreement was entered into after Monarch, an independent company, purchased Narragansett's assets. Report at 8.

In support of his recommended dismissal of Lessler's claim under section 36(b), the magistrate cited the following statutory exception to section 36(b) suits: "This subsection shall not apply to compensation or payments made in connection with transactions subject to section 80a–17 of this title...." 15 U.S.C. § 80a–35(b)(4). Notwithstanding the magistrate's prior conclusion that the Monarch–Narragansett transaction was *not* a purchase governed by section 17(a)(2), the magistrate found that Lessler's section 36(b) claim fell within this exception and thus failed to state a claim. Report at 9–10. Because he found that Lessler had no claims under section 17(a)(2) and 36(b), the magistrate also recommended dismissing Lessler's claims under sections 47(b) and 48(a), which the magistrate described as "purely remedial" provisions not creating substantive rights. Report at 10–12.

The magistrate recommended dismissing Lessler's 1934 Act claim on the basis of Rule 9(b) of the Federal Rules of Civil Procedure, which requires that allegations of fraud be "stated with particularity." Relying on three opinions of this court, the magistrate described Lessler's section 10(b) and 14(a) allegations as insufficient and "totally in conclusional form." Report at 14–15 (citing *Hayduk v. Lanna*, 775 F.2d 441 (1st Cir.1985); *Wayne Investment, Inc. v. Gulf Oil Corp.*, 739 F.2d 11 (1st Cir. 1984); *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226 (1st Cir.1980)). Finally, the magistrate recommended that Lessler's state law claims be dismissed as well because Lessler's failure adequately to state any claim under federal law deprived the court of a basis for asserting pendent federal jurisdiction. Report at 16–17.

On November 19, 1987, the district court accepted the magistrate's report and rec-ommendation in its entirety and entered judgment dismissing Lessler's complaint on the merits.

## II. INVESTMENT COMPANY ACT CLAIMS

As the Supreme Court has noted, "[t]he relationship between investment advisers and mutual funds is fraught with potential conflicts of interest." *Burks v. Lasker*, 441 U.S. 471, 481, 99 S.Ct. 1831, 1838, 60 L.Ed.2d 404 (1979) (quoting *Galfand v. Chestnutt Corp.*, 545 F.2d 807, 808 (2d Cir.1976)). "[A] typical fund is organized by its investment adviser which provides it with almost all management services.... [A] mutual fund cannot, as a practical matter sever its relationship with the adviser. Therefore, the forces of arm's-length bargaining do not work in the mutual fund industry in the same manner as they do in other sectors of the American economy." *Id.* (quoting S.Rep. No. 184, 91st Cong. at 5 (1969)). In enacting the Investment Company Act of 1940, Congress was aware of this potential conflict of interest and was also concerned by "reports of 'fantastic abuse of trust by investment company management and wholesale victimizing of security holders.'" *United States v. Smolar*, 557 F.2d 13, 20 (1st Cir.) (quoting *United States v. Deutsch*, 451 F.2d 98, 108 (2d Cir.1971), *cert. denied*, 404 U.S. 1019, 92 S.Ct. 682, 30 L.Ed.2d 667 (1972)), *cert. denied*, 434 U.S. 866, 966, 971, 98 S.Ct. 203, 508, 523, 54 L.Ed.2d 143, 453, 461 (1977). The Act was "designed primarily to correct [such] abuses of self-dealing which had produced injury to stockholders of investment companies." *Id.*

The regulatory scheme embodied in the Investment Company Act scheme carefully controls the relationship between investment advisers and investment companies. It limits the number of persons affiliated with the adviser who may serve on the investment company's board of directors, 15 U.S.C. § 80a–10, it requires that fees for investment advice and other services be governed by a written contract approved both by the directors and the shareholders of the investment company, 15 U.S.C.

§ 80a–15, and it strictly regulates most transactions between investment companies and their advisers. 15 U.S.C. § 80a–17. *See Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 536–37, 104 S.Ct. 831, 838–39, 78 L.Ed.2d 645 (1984). Lessler's claim that he and other shareholders were harmed by self-dealing on behalf of Management Company thus falls squarely within the scope of concerns addressed by the Investment Company Act.

Nevertheless, raising an issue not addressed by the magistrate, the defendants assert a threshold defense to Lessler's invocation of the Investment Company Act, at least with regard to sections other than 36(b).[5] They argue that the Investment Company Act generally may not be enforced by private parties like Lessler. Relying principally on *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), defendants point to Congress' failure explicitly to create private rights under sections like 17(a)(2) while at the same time providing for administrative enforcement and criminal penalties, *see* 15 U.S.C. §§ 80a–35(a), 80a–41, 80a–48, and urge that this legislative scheme conclusively illustrates Congress' intent not to create a private cause of action. We do not agree.

At the outset, we must express our surprise that none of the defendants has cited, let alone discussed, this court's decision in *Levitt v. Johnson,* 334 F.2d 815 (1st Cir. 1964), *cert. denied,* 379 U.S. 961, 85 S.Ct. 649, 13 L.Ed.2d 556 (1965), where an implied private cause of action under the Investment Company Act was found, at least in the context of a shareholder derivative suit. *See also Moses v. Burgin,* 445 F.2d 369, 373 & n. 7 (1st Cir.) (finding an implied private cause of action under section 36 of the Investment Company Act as it existed prior to the 1970 amendments in which Congress made explicit that such a private cause of action exists), *cert. denied,* 404 U.S. 994, 92 S.Ct. 532, 30 L.Ed.2d 547 (1971). We recognize, of course, that *Levitt* and *Moses* were decided before *Cort v.*

*Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and later cases in which the Supreme Court imposed new constraints on the implication of private causes of action. *E.g., Transamerica,* 444 U.S. 11, 100 S.Ct. 242; *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). But two post-*Cort* court of appeals decisions have both distinguished *Transamerica* and held that causes of action implied under the Investment Company Act survive that decision. *Bancroft Convertible Fund, Inc. v. Zico Investment Holdings, Inc.,* 825 F.2d 731 (3d Cir.1987); *Fogel v. Chestnutt,* 668 F.2d 100 (2d Cir. 1981), *cert. denied,* 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982). The defendants also have failed to cite or discuss these cases whose reasoning we find compelling.

In *Fogel,* stockholders of a mutual fund brought a derivative action against an investment adviser and several affiliated directors based on the failure of the adviser to take action to recapture certain brokerage commissions. The district court dismissed the stockholders' suit on the merits, but the Second Circuit, assuming that there was a private cause of action under the Investment Company Act, reversed and remanded for a computation of damages. *Fogel v. Chestnutt,* 533 F.2d 731 (2d Cir. 1975) (*Fogel I*), *cert. denied,* 429 U.S. 824, 97 S.Ct. 77, 50 L.Ed.2d 86 (1976); *see Schwartz v. Eaton,* 264 F.2d 195, 198 n. 5 (2nd Cir.1959) (finding a private cause of action under the Investment Company Act); *Brown v. Bullock,* 294 F.2d 415 (2d Cir. 1961) (same). After remand, the case returned to the Second Circuit where the defendants claimed, among other things, that cases like *Transamerica* compelled the conclusion that no implied private causes of action exist under the statute. In a thoughtful and thorough opinion by Judge Friendly, the Second Circuit rejected that argument. *Fogel v. Chestnutt,* 668 F.2d 100 (2d Cir.1981) (*Fogel II*), *cert. denied,* 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982). Judge Friendly distinguished

---

**5.** Section 36(b), by its very terms, extends a private cause of action to security holders in order to challenge breaches of fiduciary duty by investment advisers with respect to compensation. *See* note 2 *supra.*

*Transamerica,* which dealt with a companion statute, the Investment Advisers Act, from the Investment Company Act on the following basis.

> In contrast to the three court of appeals decisions, all of very recent date, *see* [*Transamerica,*] 444 U.S. at 14 n. 4 [100 S.Ct. at 244 n. 4], sustaining the availability of a private cause of action under the Investment Advisers Act, the cases in the courts of appeals upholding the private cause of action for damages for violation of the [Investment Company Act] go back to our decision in *Brown v. Bullock, supra,* in 1961, and include the Third Circuit's 1963 decision in *Taussig v. Wellington Fund, Inc.,* 313 F.2d 472, 476, *cert. denied,* 374 U.S. 806 [83 S.Ct. 1693, 10 L.Ed.2d 1031] (1963); the First Circuit's 1964 decision in *Levitt v. Johnson,* 334 F.2d 815 (1964), *cert. denied,* 379 U.S. 961 [85 S.Ct. 649, 13 L.Ed.2d 556] (1965); the Tenth Circuit's 1968 decision in *Esplin v. Hirschi,* 402 F.2d 94, 103 (1968), *cert. denied,* 394 U.S. 928 [89 S.Ct. 1194, 22 L.Ed.2d 459] (1969), and numerous other decisions of the courts of appeals....

*Fogel II,* 668 F.2d at 110. Judge Friendly found it significant that this line of cases had survived subsequent amendment of the statute in 1970, and refuted convincingly the notion that the express right of action created in 1970 under section 36(b) reasonably could be interpreted to negate the implied causes of action previously found by the courts of appeals. *Id.* at 111–12.

Building on *Fogel II,* the Third Circuit in *Bancroft* reached a similar conclusion. Its treatment of the issue is instructive.

> We need not repeat Judge Friendly's *Fogel v. Chestnutt* analysis here. We do note, however, that it is consistent with the analysis made a short time later by the Supreme Court in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353 [102 S.Ct. 1825, 72 L.Ed.2d 182] (1982). In *Curran,* the Court considered whether there is an implied private right of action for enforcement of the Commodities Exchange Act (CEA). After many courts of appeals had so held, Congress amended the CEA in 1974

and 1978, but neither the original act nor the amendments addressed the subject of private judicial remedies. The *Curran* Court, stating that the crucial issue was whether Congress, in amending the CEA, intended to preserve pre-existing implied remedies, reasoned:

>> In determining whether a private cause of action is implicit in a federal statutory scheme when the statute by its terms is silent on that issue, the initial focus must be on the state of the law at the time the [amending] legislation was enacted. More precisely, we must examine Congress' perception of the law that it was shaping or reshaping. When Congress enacts new legislation, the question is whether Congress intended to create a private remedy as a supplement to the express enforcement provisions of the statute. When Congress acts in a statutory context in which an implied private remedy has already been recognized by the courts, however, the inquiry is logically different. Congress need not have intended to create a new remedy, since one already existed; the question is whether Congress intended to preserve the existing remedy.

> *Id.* at 378–79 [102 S.Ct. at 1839] (footnote omitted). Noting that prior to the amendments, federal courts routinely and consistently recognized an implied cause of action under the CEA, the *Curran* Court concluded that an implied cause of action under the CEA was, therefore, part of the "contemporary legal context" in which Congress acted in amending the Act. *See id.* at 381 [102 S.Ct. at 1840].... Therefore, the *Curran* Court held, the prior law on implied causes of action for enforcement of the statute survived.

> We find *Fogel v. Chestnutt* persuasive authority and *Curran* controlling.

825 F.2d at 731. *See also Krinsk v. Fund Asset Management, Inc.,* 654 F.Supp. 1227, 1230–34 (S.D.N.Y.1987) (relying on *Fogel II* to imply a cause of action under the Investment Company Act); *Saylor v. Bastedo,* 100 F.R.D. 44, 52–53 (S.D.N.Y.1983) (same).

The Third Circuit noted that the implied private cause of action under the Investment Company Act had survived two sets of extensive congressional amendments, the first in 1970 and the second in 1980. In the case of the latter amendments, the legislative history accompanying the amendments explicitly stated that Congress intended the courts to continue implying private causes of action under the Investment Company Act "where the plaintiff falls within the class of persons protected by the statutory right in question." *Id.* at 735–36 (quoting H.Rep. No. 1341, 96th Cong., 2d Sess. 28–29, *reprinted in* 1980 U.S.Code Cong. & Admin.News 4800, 4810–11).

■ We agree with the Second and Third Circuits that it is consistent with congressional intent and with governing law to imply a private cause of action under the Investment Company Act. Moreover, as already stated, we think it clear that Lessler is within the class of persons intended to be protected by the Investment Company Act in general, and particularly section 17(a)(2) upon which he principally relies. We therefore reject the defendants' threshold argument and move on to consider the merits of Lessler's claims under the Investment Company Act.

■ Section 17(a)(2), in essence, prohibits investment advisers and persons affiliated with such advisers from purchasing the assets of a registered investment company. *See* note 1 *supra*. Lessler argues that Management Company and the individual defendants, who are affiliated persons, have purchased such assets, at least indirectly, by arranging for the sale of Narragansett to Monarch in conjunction with an arrangement whereby Management Company obtained a twenty percent interest in the profits to be made on former Narragansett assets now owned by Monarch. Defendants would have us reject this claim by adopting the overly technical analysis of the magistrate which segregated the Mon-

arch–Management Company fee arrangement from the Narragansett–Monarch sale. This distorts the complaint. There is no basis in Lessler's complaint for the magistrate's conclusion that the two transactions are "independent." To the contrary, the gist of the complaint is that, while the two transactions are separate on their faces, they are in fact components of a single deal.

Especially in light of section 48(a), which makes it unlawful to do indirectly that which one could not do directly, we believe that if Lessler can prove that the two transactions are related in the way he alleges, he will have a valid claim under section 17(a)(2). To hold otherwise would elevate form over substance and ignore the broad remedial purposes of the Act; it would allow the defendants, simply by structuring a deal in two parts, to immunize their plan from judicial scrutiny under the Investment Company Act. *See United States v. Smolar*, 557 F.2d 13, 20 (1st Cir.) (rejecting an "unduly restrictive" interpretation of section 17(a) because "it would make the task of regulation impossible"), *cert. denied*, 434 U.S. 866, 966, 971, 98 S.Ct. 203, 508, 523, 54 L.Ed.2d 143, 453, 461 (1977). Since it is prohibited by the Act for Management Company directly to purchase Narragansett assets, we fail to see why the Act could not also reach Management Company's attempt to achieve the same result through the more circuitous route of selling Narragansett to a third party while itself retaining an interest (in the form of an excessive contingent advisory fee) in Narragansett assets.

Of course, in order to succeed, Lessler will also need to prove that the twenty percent contingent fee (in addition to the two to three percent annual management fee) is indeed, under the circumstances, so excessive as an investment advisory fee as to constitute an ownership interest by Management Company in the assets managed.[6] But Lessler is entitled to his

---

**6.** Defendants have argued that we should hold, as a matter of law, that a twenty percent contingent fee arrangement is permissible under the statute and thus could never amount to an own-

ership interest. Brief of Defendants–Appellees at 14; Monarch Brief at 8 n. 6 (both citing section 205 of the Investment Advisers Act, 15 U.S.C. § 80b–5, which permits compensation *up*

day in court to attempt to prove exactly that. Accordingly, the district court's dismissal of Lessler's section 17(a)(2) claim must be reversed and the issue remanded for further proceedings.

■ Section 36(b)(4) of the Investment Company Act makes it clear that rights and remedies under section 17 and section 36(b) are intended to be mutually exclusive. It provides that section 36(b) "shall not apply to compensation or payments made in connection with transactions subject to section 80a–17...." 15 U.S.C. § 80a–35(b)(4). Since we have held that Lessler's complaint does state a claim under section 17(a)(2), it therefore follows that his complaint does not also state a claim under section 36(b). In addition, even if the transaction involved here was not "subject to" section 17, Lessler's section 36(b) claim would fail for another reason. Section 36(b) provides shareholders with a cause of action for compensation "paid" to an investment adviser in violation of the adviser's fiduciary duty. *See* note 2 *supra*. Here, however, the disputed compensation is the twenty percent contingent fee, and Lessler does not allege that any part of that fee has yet been paid by Monarch to Management Company. Lessler therefore can point to no cognizable loss under section 36(b) upon which to sue. The district court's dismissal of Lessler's section 36(b) claim is affirmed.

■ Lessler's final Investment Company Act claim is his request for rescission of the Narragansett–Monarch sale contract under section 47(b)(1), and his related request for unjust enrichment recovery under section 47(b)(3). In this claim, Lessler appears to have overlooked the plain language of the very statutory section he invokes. Section 47(b)(1) declares that contracts entered into in violation of the other provisions of the Investment Company Act are "unenforceable *by either party*." 15 U.S.C. § 80a–46(b)(1) (emphasis added). Lessler is not a party to the Narragansett–

Monarch contract, nor does his complaint assert a derivative action on behalf of Narragansett, which is a party. Lessler proceeds solely on his own behalf as a shareholder and on behalf of others similarly situated. As our previous decisions have made clear, a shareholder such as Lessler lacks standing to pursue on his own claims properly belonging to the corporation. *E.g., In re Dein Host, Inc.*, 835 F.2d 402, 405–06 (1st Cir.1987). The dismissal of Lessler's section 47 claim was proper.

### III. 1934 ACT CLAIMS

■ Although Lessler asserts claims under two sections of the 1934 Act, he concedes that, in order to succeed under either his section 10(b) or section 14(a) claims, he must prove that the defendants are responsible for some material misrepresentation or material omission concerning the sale of Narragansett to Monarch. Lessler Brief at 28. Because we believe that Lessler's complaint fails to allege any such misrepresentation or omission, we affirm the district court's dismissal on that ground without addressing the Rule 9(b) pleading issue relied upon by the magistrate.

It is important to note first that the only statements identified by Lessler's complaint that are allegedly false and misleading are those contained in the September 19, 1986 proxy statement. Amended and Supplemental Complaint at 10–11. Moreover, as Lessler concedes, it is clear that the contested proxy statement did reveal the basic outline of the Narragansett–Monarch sale. The proxy statement discloses: (1) that certain of the individual defendants in this action are stockholders and/or directors and officers of Narragansett and Management Company; (2) that the defendants who are stockholders of Narragansett will, as part of the sale, receive from Monarch their pro rata payment for shares owned; and (3) that in addition Management Company, and thus its stockholders, will receive from Monarch an in-

---

*to* twenty percent in some circumstances). The statute does not, however, say that a twenty percent fee is always reasonable, and we think that the reasonableness of any fee must be eval-

uated under the specific facts and circumstances of a given case. On the meager record before us on this motion to dismiss, no such evaluation is possible.

vestment advisory fee of two to three percent annually plus twenty percent of all profits made by Monarch at the disposition of former Narragansett assets.

Lessler contends that, in spite of this disclosure, the proxy statement was materially false because of how it labeled the Monarch–Management Company deal: it described the arrangement as a bona fide advisory contract rather than as a "guise" or "sham" to divert Narragansett assets to Management Company. Lessler is, in essence, complaining about the wording and editorial presentation of the proxy statement, not its substance. Under established case law, this claim must fail.

The case most directly on point is *Golub v. PPD Corp.*, 576 F.2d 759 (8th Cir.1978). In *Golub*, minority shareholders mounted a section 10(b) and section 14(a) challenge to the sale of a corporation's assets on the basis of an allegedly misleading proxy statement. In particular, the stockholders complained that the proxy statement described certain payments to top management personnel as bonuses for entering the employ of the purchasing corporation, when they were actually premiums to be paid on account of management's controlling stock ownership and willingness to make the sale of assets. The Eighth Circuit rejected the claim that the proxy statement was misleading in violation of the 1934 Act. Its analysis bears repeating:

> As far as proxy statements are concerned, and regardless of whether the question arises in a suit brought under § 14(a) or (e) and implementing rules or whether it arises in a suit based on § 10(b) and Rule 10b–5, the federal purpose is served if the statement fully and fairly sets out such relevant and material facts as would enable a reasonably prudent stockholder to make an intelligent decision as to whether to grant the requested proxy or as to how he should vote on the questions mentioned in the proxy statement.
>
> .  .  .  .  .
>
> Section 10(b) of the Exchange Act and Rule 10b–5 are designed principally to impose a duty to disclose and inform rather than to become enmeshed in passing judgments on information elicited. This design has special relevance to merger transactions that, under state law, must be subjected to shareholder approval. In the context of such transactions, if federal law ensures that shareholder approval is fairly sought and freely given, the principal federal interest is at an end. Underlying questions of the wisdom of such transactions or even their fairness become tangential at best to federal regulation.
>
> .  .  .  .  .
>
> Actually, the plaintiffs are not complaining about any absence of facts in the proxy statement. Their complaint is that those who prepared the statement did not "disclose" what the plaintiffs say was the true motivation of [management] in selling assets of the company, and did not characterize the bonus aspect of the transaction as plaintiffs would have it characterized. Under the Act and regulations, plaintiffs were not entitled to have such a "disclosure" or such a characterization.

*Id.* at 762–63 (citations omitted) (quoting *Popkin v. Bishop*, 464 F.2d 714, 719–20 (2d Cir.1972) (citations omitted)). *See also Kas v. Financial General Bankshares, Inc.*, 796 F.2d 508, 517 (D.C.Cir.1986) ("The federal securities laws require only that the various roles of [interested officers and directors] be clearly disclosed—as they were. The defendants need not label or editorialize on the disclosed facts, at least where the potential conflict of interest would be obvious to any reasonable shareholder.") (citing *Golub*); *Data Probe Acquisition Corp. v. Datalab, Inc.*, 722 F.2d 1, 5–6 (2d Cir.1983) ("[T]he proxy materials sent ... described the guarantees of employment negotiated by [interested directors] and thus disclosed their conflict of interest. We see no additional informational benefit accruing to shareholders by requiring the beneficiaries of such contracts to announce that they regard them favorably.... The disclosure required by the Act is not a rite of confession or exercise in

common law pleading. What is required is the disclosure of material objective factual matters."), *cert. denied,* 465 U.S. 1052, 104 S.Ct. 1326, 79 L.Ed.2d 722 (1984); *Valley National Bank v. Trustee for Westgate–California Corp.,* 609 F.2d 1274, 1282 (9th Cir.1979) ("As to ... inadequate disclosure of conflicting interests among the directors and trustees—it should be noted that no one contends that the information was undisclosed.... The sole claim is that the information was 'buried' in the information statement and thus did not give adequate notice of potential conflicts. We disagree.... The [plaintiffs] may wish to have seen the potential conflicts appear [in a different part of the statement], but they cite no authority which would require this textual organization."), *cert. denied,* 444 U.S. 1015, 100 S.Ct. 667, 62 L.Ed.2d 645 (1980).

Here, Narragansett did disclose all of the relevant *factual* details concerning the Narragansett–Monarch sale, including the now-disputed twenty percent contingent fee to be paid by Monarch to Management Company. Through this disclosure, reasonably intelligent shareholders were made aware of the substance of the proposed transaction. Indeed, Lessler's complaint, in which the central factual allegations are simply restatements of facts contained in the proxy statement, demonstrates that shareholders could "see through" management's characterization of Management Company's twenty percent interest as an investment advisory fee. Lessler has no grounds under the 1934 Act for complaining about management's choice of words.[7] The district court's dismissal of Lessler's 1934 Act claims is affirmed.

## IV. STATE LAW CLAIMS

Without discussing their merits, the district court dismissed Lessler's state law claims on jurisdictional grounds. The court reasoned that because all of Lessler's federal claims had been dismissed before trial, a federal court should not exercise pendent federal jurisdiction over his state law claims. Report at 16 (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966)). We have, however, determined that Lessler's claim under section 17(a)(2) of the Investment Company Act should not have been dismissed. Accordingly, on remand the district court should reconsider whether, in its discretion, Lessler's state law claims now merit the assertion of federal jurisdiction.

## V. CONCLUSION

The district court's judgment dismissing Lessler's claims under sections 36(b) and 47 of the Investment Company Act and sections 10(b) and 14(a) of the 1934 Act are affirmed. The dismissal of Lessler's claims under section 17(a)(2) of the Investment Company Act is reversed. The case is remanded for further proceedings consistent with this opinion.

No costs on appeal.

7. In defense of his 1934 Act claims, Lessler relies heavily on the district court opinion in *Hahn v. Breed,* 587 F.Supp. 1369 (S.D.N.Y.1984). Lessler claims that the court in *Hahn* upheld a section 10(b) and section 14(a) claim solely on the ground that a proxy statement mischaracterized the true purpose of payments to the trustee of a business trust. *Hahn,* however, is distinguishable from this case in that the plaintiffs there also challenged a specific factual representation in the proxy statement, namely, that no discussions concerning a consulting agreement had taken place while merger terms were being negotiated. 587 F.Supp. at 1374–75. Moreover, to the extent that the holding in *Hahn* goes beyond that distinction, and purports to rest a 1934 Act claim solely on the basis of the labels used to describe a payment which was otherwise fully disclosed factually, it is a district court opinion that is inconsistent with circuit court precedent (including the opinion of the Court of Appeals for the Second Circuit, in which that district court sits, *see Data Probe,* 722 F.2d at 5–6) and it is not entitled to deference by this court. *See also* cases cited *supra* at 875–76.